UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DERRICK COLES, on behalf of himself
and on behalf of all others similarly situated,

                Plaintiffs,

v.                                          Case No. : 8:17-cv-829-EAK-AEP

STATESERV MEDICAL OF FLORIDA, LLC,
THE STATESERV COMPANIES, LLC, and
STATESERV MEDICAL, LLC

                Defendants.
_____/

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiff, Derrick Coles ("Plaintiff"), and Defendants, STATESERV MEDICAL OF FLORIDA, LLC, THE STATESERV COMPANIES, LLC, and STATESERV MEDICAL, LLC, (collectively, the "Defendant") hereby file this Joint Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law, seeking the Court's final approval of the Parties' Settlement Agreement ("Settlement Agreement" - previously filed with the Court as an attachment to ECF 48 and filed herewith as Exhibit "1").  Since the Court preliminarily approved the Settlement Agreement, notice was mailed to class members.  The reaction has been overwhelmingly positive.  No class members objected and one class member requested to be excluded from the Settlement.  Practically speaking, little has changed since the Court issued the Order granting Preliminary Approval, confirming the Settlement is fair, reasonable, adequate, and warrants final approval.

**I.      BACKGROUND**

      In June 2015, Plaintiff applied for employment with Defendant.  Plaintiff alleged

Defendant did not lawfully disclose to him that it intended to procure his consumer report for employment purposes. Specifically, Defendant failed to provide him with a "stand-alone" disclosure form pursuant to 15 U.S.C. § 1681b(b)(2)(A), causing him informational injury by depriving him of information to which he was legally entitled. Concomitantly, Plaintiff alleged since Defendant did not provide him with a lawful disclosure, Defendant had no permissible purpose for obtaining his consumer report, thereby violating his right to privacy. Based on the foregoing alleged violation, Plaintiff asserted Fair Credit Reporting Act ("FCRA") claims against Defendant on behalf of himself and a "Background Check Class" consisting of other consumers to whom Defendant provided a substantially similar disclosure form and upon whom Defendant obtained a consumer report for employment purposes.

Plaintiff and Defendant, (together, the "Parties") mediated the action over two days with Mr. Carlos Burruezo, Esq. After two full days of adversarial negotiations, the Parties reached an agreement in principal and notified the Court accordingly. Thereafter, the Parties negotiated the finer points of settlement, which have been incorporated into the Settlement Agreement.

On March 5, 2018, the Court certified a Background Check class for settlement purposes (the "Settlement Class"). (ECF 45). In the Report and Recommendation, the Court certified for settlement purposes a class defined as:

> **Background Check Class:** All employees and job applicants of StateServ Medical of Florida, LLC, the StateServe Companies, LLC, StateServ Medical LLC, and any of their affiliates related companies, agents, and owners (the "StateServ Entities"), who were the subject of a consumer report procured by StateServ Medical of Florida, LLC, the StateServe Companies, LLC, or StateServ Medical LLC ("Defendants") within five years of the filing of the complaint through the date of final judgment based upon disclosure authorization forms substantially similar to **Exhibits A and B**.[1]

---

[1] Exhibits A and B refer to the first two exhibits attached to Plaintiff's Unopposed Motion for Class Certification (Doc. 38).

On June 19 2018, the Court preliminarily approved the Settlement Agreement and proposed Notice to Class Members (ECF 50).

## II.     OVERVIEW OF SETTLEMENT TERMS AND RELIEF

### A.     The Settlement Class And Benefits

The Settlement resolves the claims of a nationwide class consisting of consumers upon whom it is alleged Defendant unlawfully obtained a background check for employment purposes in violation of the FCRA.  Settlement Class members submitting claims forms will receive cash payments well above the minimum statutory damages available under the FCRA, without having to show that Defendant willfully violated the FCRA.

If final approval is granted, the settlement requires Defendant to create a Settlement Fund of $172,500 for a class consisting of 522 members. (Settlement Agmt., ¶ 4.1.2).  All costs, expenses, fees, relief, and/or any payments of any kind in connection with or associated with this Settlement shall be paid from the Settlement Fund, including: (a) all payments to the Settlement Class members; (b) Service Awards to the Named Plaintiff; (c) all costs of notice and settlement administration; and (d) all Attorneys' Fees and Costs, as approved by the Court. (*Id.* ¶¶ 7.2-7.3).

The Net Settlement Fund, which is the amount remaining after attorneys' fees and costs, costs of notice to the Settlement Class and settlement administration, and Plaintiff's service award, will be distributed *pro rata* to each member of the Settlement Class.  Settlement Class members shall have 45 days from the date on which checks are mailed to negotiate their checks. (*Id.* ¶ 7.2.5).

The monetary relief obtained by this proposed settlement demonstrates that this settlement is a very good result for the Settlement Class.  The gross recovery for the Settlement Class members was approximately $330.  After all expenses are deducted from the common

fund, Settlement Class members will receive a net award of approximately $240 each, an amount in excess of the $100 minimum statutory damages they would receive if they were to prevail and willfulness. *See* 15 U.S.C. § 1681n.

**B.   Notice And Administration**

The Parties utilized a private, Court-approved third-party vendor, Signal Interactive Media, LLC d/b/a Garretson Resolution Group, Inc., to notify the Settlement Class of the settlement and to provide settlement administration services. The Parties agreed that the expense of providing notice to the Settlement Class and administering the settlement would be paid from the Settlement Fund (Settlement Agmt., ¶ 7.3.1).

Defendant provided the Settlement Administrator with a list of 522 class members containing the last known mailing address for each of those members (Exhibit "2" - Hively Declaration, ¶ 6). The Administrator used commercially reasonable means to ensure delivery was effective, including using the National Change of Address Database ("NCOA") and skip tracing for envelopes returned undeliverable (*Id*.). On October 19, 2018 the Court approved Class Notice was mailed by First Class U.S. Mail to 522 Class Members. (*Id*.). Ultimately, 106 Class Notices have been deemed undeliverable. (*Id*., ¶7).

The Class Notices informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice. (*Id*., Ex. A). The Class Notices also directed recipients to the settlement website, www.stateservfloridasettlement.com, which contained additional information

about the Settlement (*Id.*, ¶ 9 and Ex. A). The Settlement Administrator also maintained a toll-free telephone number for questions related to the Settlement. (*Id.*, ¶ 10). These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B)..

Initial payments to Settlement Class members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. All initial checks will expire forty-five (45) days after they are issued and will state the expiration date on their faces. After the initial 45-day period for negotiating checks, any uncashed settlement compensation in the Settlement Fund will be pooled and distributed equally *cy pres* to the Cornerstone Hospice Foundation and Lions Eye Institute Foundation, subject to Court Approval. (Settlement Agmt.,¶ 7.2.2).

In sum, notice was efficiently disseminated and virtually all Settlement Class members were informed of the Settlement.

**C.  Settlement Class Members Overwhelmingly Support the Settlement and There Are No Governmental Objectors**

The deadline for exclusions and objections was December 18, 2018. There were zero objections and one request for exclusion. (Hively Decl., ¶ 8).[2] Unquestionably, the Class Members' reaction to the Settlement was overwhelmingly positive.

**D.  The Release of Claims**

In return for the substantial benefits Settlement Class members will receive, they will release all claims against Defendant from any and all claims, actions, or causes of action under

---

[2] Objections were required to be served upon Class Counsel, Defendant's Counsel and the Court on or before December 18, 2018. No objections have been received.

5

15 U.S.C. § 1681b(b)(2)(A) of the FCRA, and any state law equivalent (Ex. 1, Settlement Agreement, ¶¶ 8.1) related to background checks.

**E.     Attorneys' Fees and Expenses**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one third (33.33%) of the Settlement Fund as attorneys' fees and costs. (Settlement Agreement, ¶ 7.2.8). Class Counsel has filed a separate motion seeking approval for fees and costs, including costs of providing notice to the Settlement Class and for Settlement Administration services (ECF 61). Defendant agrees not to oppose the amount of fees and costs sought by Class Counsel, up to one third of the Settlement Fund. (Settlement Agreement, ¶ 7.2.8).

### III.     THE LITIGATION

**A.     Allegations in the Complaint**

In June 2015, Plaintiff applied for employment with Defendant. Plaintiff alleges Defendant did not lawfully disclose to him that it intended to procure his consumer report for employment purposes. Specifically, Defendant failed to provide him with a "stand-alone" disclosure form pursuant to 15 U.S.C. § 1681b(b)(2)(A), causing him informational injury by depriving him of information to which he was legally entitled. Concomitantly, Plaintiff alleges Defendant had no permissible purpose for obtaining his consumer report, thereby violating his right to privacy. Based on the foregoing facts, Plaintiff filed his Class Action Complaint against Defendant.

Defendant asserted numerous defenses, having denied, and continues to deny, that it violated the FCRA with regard to the Class Representatives and/or any putative Class Members. Defendant asserted, and continues to assert, that its disclosure does not violate the FCRA, much

less constitute a willful violation of the FCRA as is necessary to demonstrate liability in this case. As part of the Settlement Agreement, Defendant denies any wrongdoing; does not admit or concede any actual or potential fault or liability in connection with any facts or claims that have been alleged against it in the Action; and denies that the claims asserted by Class Representatives are suitable for class treatment other than for settlement purposes (Ex. 1, Settlement Agmt., ¶¶ 2.1-2.2). The Settlement Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant. (*Id.*)

**B.    Discovery is More Than Sufficient to Support the Settlement**

Plaintiff served production requests, interrogatories and requests for admissions on Defendants. Through discovery efforts, Class Counsel was able to obtain sufficient information to analyze the merits of the claims and the size of the putative class.

**IV.    PRELIMINARY CLASS CERTIFICATION AND APPROVAL WAS CORRECT AS THE SETTLEMENT IS UNOPPOSED AND FULLY SATISFIES RULE 23(e)**

In Plaintiff's Unopposed Motion for Class Certification, Class Counsel presented detailed justification for certification of the settlement class under Rule 23(a) and 23(b)(3). (ECF 38). The Court's Preliminary Approval Order found that, for settlement purposes, the settlement class was proper under Rule 23(a) and 23(b)(3). (*See* ECF 45.) Since the Court's Preliminary Approval Order, there have been no objections to certification. Thus, the Settlement Class is appropriately certified for the reasons summarized in the Motion for Preliminary Approval, and as further set forth below.

**A.    The Settlement Class Meets the Requirements of Rule 23(a)**

The Court can certify a settlement class where the proposed class and its representatives meet the four prerequisites in Federal Rule of Civil Procedure 23(a) - numerosity, commonality,

7

typicality, and adequacy of representation—and one of the three requirements of Federal Rule of Civil Procedure 23(b). Fed. R. Civ. P. 23. The Court has already preliminarily certified the Settlement Class. Nothing has changed that would impel the Court to reconsider its previous determination.

### 1. Numerosity

The proposed class of 522 consumers across the country are "so numerous that joinder of all members is impracticable." Fed. R. Civ P. 23(a)(1). The Court may find the numerosity factor satisfied if the Court concludes it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class members is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.,* 2013 U.S. Dist. LEXIS 130591, at *4 (No. 8:13-cv-1204-T-33TBM, M.D. Fla. Sept. 12, 2013) (citing *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986)). The Settlement Class still satisfies numerosity.

### 2. Commonality

The United States Supreme Court has clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)). Courts in this Circuit have applied *Dukes* to the commonality analysis, but caution that *Dukes* does not set an impossible standard for commonality. "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike." *Klewinowski*, 2013 U.S. Dist. LEXIS

130591, at *5–6 (internal quotations and citation omitted); *see also Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012) (citing *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009)).

In the instant case, Plaintiff asserts Defendant failed to provide consumers with a compliant disclosure form prior to obtaining their consumer report for employment purposes. Determining liability on these claims will require resolving several common questions including, but not limited to: (1) whether Defendant's FCRA disclosure forms satisfy the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); and (2) whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA. *See* 15 U.S.C. § 1681n and § 1681s; *see Hargrett v. Amazon.com DEDC LLC,* Case No. 8:15-cv-02456-WFJ-AAS, Document 187, (M.D. Fla. November 16, 2018)(granting final approval to similar FCRA disclosure class action lawsuit)*; Graham v. Pyramid Healthcare Solutions, Inc.*, Case No.: 16-cv-01324-JSM-AAS, Document 72 (M.D. Fla. February 2, 2018)(granting final approval to similar FCRA disclosure class action lawsuit).  The Court's original decision on commonality should remain intact.

  **3.** **Typicality**

Under Federal Rule of Civil Procedure 23(a)(3), "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (citing *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008).  The typicality requirement "is said to limit class actions to those fairly encompassed by the Class Representatives' claims." *GTE Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980).

In this case, the legal theory underlying the claims of the putative class members are identical to Named Plaintiff's FCRA claims. All of the claims are based on a substantially similar, if not identical, set of facts and are grounded in the same legal theories; namely, Defendant's FCRA disclosure failed to satisfy the requirements of the FCRA. The Named Plaintiff's claims are typical of the Classes and, consequently, the typicality requirement of Rule 23(a)(3) has been met. *See* Fed R. Civ. P. 23(a)(3); *Graham v. Pyramid Healthcare Solutions, Inc.*, Case No.: 16-cv-01324 (M.D. Fla. October 26, 2016).

### 4. Adequacy of Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (citing *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008). The Court's adequacy decision has not been questioned, providing no impetus for reconsideration.

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. Fed R. Civ. P. 23(b)(3). As summarized below, the proposed Settlement Class continues to meet the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1. Predominance

Predominance is governed by an analysis of whether liability may be resolved on a class wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis ensures a class case will not degenerate into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact continue to predominate. The two principal common issues in this case are whether Defendant's FCRA forms satisfy the disclosure requirements of 15 U.S.C. § 1681b(b) and, if not, whether Defendant's failure to comply with the FCRA was willful. These principal common issues are central to the case, and can be decided uniformly for all the Settlement Class members in broad strokes. Thus, class certification is appropriate.

### 2. Superiority

The Court must also consider whether the superiority requirement has been satisfied. In making the determination, the Court may consider, among other factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Class action is still the superior means to resolve this action. The Settlement Class members share common issues but, individually, are only entitled to relatively small statutory damages. Thus, the individual interest in controlling the case through separate actions is relatively low. *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20. Concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 679 (S.D. Fla. 2011). Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *21. Hence, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met. *See Smith*, 2007 U.S. Dist. LEXIS 85551, at *12–14 (finding superiority under Rule 23(b)(3)); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20–21 (same).

**C.    The Class Notice Met the Requirements of Rule 23(c) And Due Process**

Federal Rule of Civil Procedure 23(c)(2)(B) requires that class notice:

> [C]oncisely state in plain, easily understood language:
> 
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Notice satisfies each of these requirements. The Notice summarized the nature of the pending FCRA Litigation and the Settlement Agreement's essential terms, and

provides each of the Settlement Class member with their legal rights and options in this settlement. The Class Notice further discussed the nature of the action, described the Settlement Class definition, the terms of the Agreement and that it will be binding on those who do not opt out if given final approval, and informed the Settlement Class members of the Class claims and the Parties' contentions and defenses. The Notice also stated that the Settlement Class members may enter an appearance through counsel. The right of the Settlement Class members to exclude themselves, and the time, manner, and process for doing so, was prominently detailed in the Class Notice. Additionally, the Class Notice directed recipients to a website dedicated to the Settlement, which contained additional details about the Settlement for the Settlement Class members to review. After receiving this information, none of the Settlement Class members elected to exclude themselves from the Settlement.

As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

This Court approved that notice be issued by U.S First Class mail to the last known address of each of the Settlement Class members, as reflected in Defendant's records, or as instructed by the Settlement Class member through Class Counsel. If any mail was returned undeliverable, the Administrator took reasonable steps to obtain corrected addresses and re-mail the returned notices. This method of notice satisfies the "best notice practicable" test.

**D.     The Settlement is Fair, Reasonable, and Adequate**

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (citing *In re CP Ships Ltd. Secs. Litig.*, 578 F.3d 1306, 1317–18 (11th Cir. 2009)). "[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be 'informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-CV-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), *report and recommendation adopted*, No. 813CV03072EAKTBM, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017).

**1.     The Likelihood of Success at Trial Confirms Settlement is Appropriate**

Continuing the FCRA Litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses Defendant intended to assert if the case was not settled. From Plaintiff's perspective, there was a risk the Court would accept one or more of Defendant's arguments on a key point and dismiss the case, grant summary judgment, or refuse to certify the Settlement Class. Plaintiff's success on any of these aspects in motions practice, let alone at trial, was not guaranteed. And, of course, Plaintiff still faced the uphill battle of proving willfulness at trial even if he survived dispositive motions and was successful in certifying the

Settlement Class. There is no certainty that continued litigation would provide a better outcome than the settlement. This factor therefore favors a finding that the Settlement is fair, reasonable, and adequate. *Youngman v. A&B Ins. & Fin., Inc.*, No. 616CV1478ORL41GJK, 2018 WL 1832992, at *7 (M.D. Fla. Mar. 22, 2018), *report and recommendation adopted*, No. 616CV1478ORL41GJK, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) (approving settlement where plaintiffs faced similar difficulties of proof at trial).

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc. (In re BGI, Inc.)*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful). Therefore, it is reasonable for the Settlement Class members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *23–24 (approving class settlement awarding approximately 30% of possible recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success").

**2. The Recovery in the Settlement is Substantially Above the Minimum that the Settlement Class Members May Recover at Trial**

The Settlement, based on a gross recovery of approximately $330 per Settlement Class member in this settlement is in line with settlement amounts in similar cases under the FCRA. *See, e.g. Graham,* Case No.: 16-cv-01324-JSM-AAS, Document 72 (M.D. Fla. February 2, 2018)(Final approval order approving $100 reward to class members); *Speer v. Whole Food Mkt.*

15

*Grp., Inc.,* No. 8:14-CV-3035-T-26TBM, Document 68,(M.D. Fla. January 1, 2016)(final Order entered by Judge Lazzara approving $40 gross recovery for FCRA class members); *Simons v. Aegis Commc'ns Grp.,* No. 2:14-cv-04012, Document 29, (W.D. Mo. Oct. 15, 2014)(preliminarily approving improper disclosure settlement with payment of $35 per class member).

If the case were to be litigated through trial, and Plaintiff prevailed on the merits, the statutory damages for each Settlement Class member would be fixed between $100-$1,000. However, if Defendant defeated Plaintiff's motion for class certification or was successful on a motion for summary judgment (or the inevitable appeals), the Settlement Class members could receive nothing. Here, if the Court approves the Settlement, the Settlement Class members will quickly monetize their FCRA claims. The Settlement Class members will receive an award exceeding $240.00, or 24% of the maximum that could be recovered through successful litigation, before accounting for attorney's fees and costs. Thus, the Settlement Class members stand to receive payments within the range that they could recover at trial, without any further risk, expense, or even the need to prove their claims and willfulness or even having to submit a claim. Unquestionably, continuing to litigate would not guarantee a better outcome.

   **3. Continued Litigation will be Complex, Expensive and Resource-Consuming**

There is an inherent and substantial expense to continued litigation. If a settlement had not been reached, Plaintiff and Defendant both would have commenced intensified discovery. Discovery would have been followed by dispositive motions by Defendant in addition to Plaintiff's Motion for Class Certification, the outcomes of which would determine the course of the litigation. If Plaintiff were to prevail, the action would have proceeded to trial, with the significant expense and use of resources that accompanies trial preparation. Defendant would

likely seek interlocutory review of the class certification decision, requiring additional time and briefing.

If Defendant were to prevail on a case dispositive motion, Plaintiff most likely would appeal. A summary-judgment victory for Defendant would not conclude the case, as successful appeal by Plaintiff would perpetuate the litigation. Under any scenario, the Settlement Class members would be deprived of any relief for a significant length of time.

Class and Defense Counsel are experienced class action litigators, who reached this Settlement with the assistance of an experienced mediator. The Parties exchanged and reviewed hundreds of pages of documents, and had sufficient information in their possession to evaluate their respective positions. Both sides strongly recommend that the Court approve the Settlement. The Court should do so. *Fernandez*, 2017 WL 7798110, at *2.

### 4. There is No Opposition to Any Aspect of the Settlement

As noted above, nearly all the Settlement Class members have been notified of the Settlement. None objected and one class member asked to be excluded. All appropriate governmental entities have been notified of the Settlement, and none have objected. Class Counsel is not surprised at a lack of objections - the Settlement is a very good result for the Settlement Class. The complete absence of opposition to the Settlement favors a finding that it is fair, reasonable, and adequate. *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval.").

### 5. The Settlement was Reached at an Appropriate Stage of Proceedings

This factor focuses on assuring that "the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further

litigation." *United States ex rel. Balko*, 2017 WL 9398654, at *12. In this case, Plaintiff certainly did. The Parties engaged in extensive discovery exchanging hundreds of pages of documents. A nationally respected mediator oversaw settlement discussions, further confirming the adequacy of the Settlement. Class counsel is satisfied the case has been thoroughly investigated. Thus, the Court should conclude that this factor also favors granting final approval. See *Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *4 (M.D. Fla. Aug. 21, 2014), aff'd, 618 F. App'x 624 (11th Cir. 2015) (finding similar facts weighed in favor of approval of settlement).

## V. CONCLUSION

The Agreement is in the best interest of the Parties and the Settlement Class, was reached through arm's-length negotiations through a well-respected mediator, and is fair and reasonable to all concerned.

WHEREFORE, the Plaintiff and Defendant respectfully requests that the Court enter a Final Order: (1) approving the Settlement Agreement between Named Plaintiff, on his own behalf and on behalf of the Settlement Class, and Defendant; (2) certifying the above-described Settlement Class for settlement purposes; and, (3) requiring the Parties to comply with the terms and conditions in the Settlement Agreement or pursuant to the Court's Order granting Final Approval.

Dated this 4th day of January, 2019.

| MORGAN & MORGAN, P.A. | MURPHY & ANDERSON, P.A. |
|---|---|
| /s/ **Marc R. Edelman** | /s/ **Geddes D. Anderson, Jr.** |
| Marc R. Edelman, Esq. | Geddes D. Anderson Jr., Esq. |
| Fla. Bar No. 0096342 | Fla. Bar No. 0138894 |
| 201 N. Franklin Street, #700 | ganderson@murphyandersonlaw.com |
| Tampa, FL 33602 | jbunnell@murphyandersonlaw.com |
| Telephone 813-223-5505 | Lawton R Graves, Esq. |

| | |
|---|---|
| Fax: 813-257-0572<br>MEdelman@forthepeople.com<br><br>C. Ryan Morgan, Esq.<br>Fla. Bar No.0015527<br>P.O. Box 4979<br>Orlando, FL 33802<br>Telephone 407.420.1414<br>Fax: 407.245.3401<br>RMorgan@forthepeople.com<br><br>Andrew Frisch, Esq.<br>Fla. Bar No. 27777<br>600 North Pine Island Road, Suite 400<br>Plantation, Florida 33324<br>Telephone: (954) WORKERS<br>Facsimile: (954) 327-3013<br>AFrisch@forthepeople.com<br>*Attorneys for Plaintiffs* | Fla. Bar No. 0086935<br>lgraves@murphyandandersonlaw.com<br>1501 San Marco Blvd.<br>Jacksonville, FL 32207<br>(904)598-9282 Fax: (904) 598-9283<br>*Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of January, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties of record.

                                                    **/s/** ***Marc R. Edelman***
                                                    MARC R. EDELMAN, ESQ.